ties to that agreement intended that only collectible accounts should be covered by the contract and inserted in the list, and that there was a mutual mistake as to this particular account, it furnishes ground for reformation of the contract by striking out the account in question so that it should not pass under the transfer of assets, but remain a subject of accounting between the co-partners. The mistake, if any, was in failing to draw the contract in conformity with the understanding of the parties, and the relief of the plaintiff, if any, is in equity, where his damages can be recovered, if his equity is established. We do not, of course, express any opinion upon the sufficiency of the testimony offered. This view renders unnecessary a discussion of the other points ably argued in the briefs. It is clear that the effort of the plaintiff was not, by his testimony, to explain the terms of his contract, but rather to reconstruct it. To do this, he must go into equity.

Judgment affirmed, with costs. All concur.

(17 Misc. Rep. 699.)

NEW YORK CITY BAPTIST MISSION SOC. v. TABERNACLE BAPTIST CHURCH.

(Supreme Court, Special Term, New York County. July, 1896.)

MORTGAGES—OPTION TO DECLARE DEBT DUE.

    An option to declare the mortgage debt due, and to foreclose for nonpayment of interest, taxes, assessments, or insurance, is given by the conditions that payment of the debt should be enforced only when the mortgaged premises should cease to belong to the mortgagor, or the building thereon should cease to be used as a church; that if default should be made in the payment of interest, or should any tax or assessment become a lien on the mortgaged premises, and remain unpaid for its specified term, then the mortgage debt should, at the option of the mortgagee, become due and payable immediately thereafter; and that the mortgagor should keep the buildings insured, in default of which the mortgage should become due and payable, as the covenants relating to the interest, taxes, assessments, and insurance are each absolute and independent covenants.

Action by the New York City Baptist Mission Society against the Tabernacle Baptist Church to foreclose mortgages. Judgment for plaintiff.

Edward S. Clinch, for plaintiff.

Peck & Field, for defendant.

SMYTH, J. This action is brought to foreclose four bonds and mortgages made by the defendant, the Tabernacle Baptist Church, as follows: First, for $5,000, to Caroline C. Bishop; second, for $30,000, to John D. Rockefeller; third, for $30,000, to Jabez A. Bostwick; fourth, for $23,400, to John D. Rockefeller. The first three above-mentioned bonds and mortgages are respectively dated May 21, 1887, and the fourth May 6, 1891. The first three of these bonds and mortgages were assigned by the mortgagees to the Southern New York Baptist Association, which association subsequently assigned them to the plaintiff in this action. The fourth of said bonds and mortgages was assigned by the mortgagee to the plaintiff. The as-

v.41 N.Y.s.no.7—33

signment of said bonds and mortgages by the Southern New York Baptist Association to the plaintiff was made pursuant to the provisions of chapter 410 of the Laws of 1893, entitled "An act to incorporate the New York City Baptist Mission [the plaintiff in this action] and authorize the transfer of property to it by the Southern New York Baptist Association and the American Baptist Home Mission Society," passed April 17, 1893, and also pursuant to a resolution adopted by the Southern New York Baptist Association on the 10th of October, 1895. The following recital is contained in all of said bonds:

"And whereas, it is the intention of the said obligee, in order to secure said loan to the Baptist denomination (and for Baptist church use for all time), to extend the time of payment of the said principal sum (naming it) so long as the property mentioned and described in the accompanying mortgage, bearing even date herewith, shall belong to the said Tabernacle Baptist Church, and the church edifice erected thereon shall be used as a regular Baptist house of worship, and the congregation worshipping in said house of worship shall be recognized by the Southern New York Baptist Association or its successors as a regular Baptist church, and the other building or buildings erected on said premises shall be used exclusively for religious services and parsonage purposes, and for mission or other charitable work conducted by the said Baptist church, and so long as the said Baptist church shall pay to the said obligee [naming him], his executors, administrators, or assigns, the nominal interest of $1 per annum for the whole of said principal sum, yearly, as the same shall accrue, on the first day of May in each and every year until the said principal sum shall be fully paid."

And also conditions to the following effect: (1) That the principal sum should be payable and payment thereof enforced only when the mortgaged premises should cease to belong to the Tabernacle Baptist Church, or the church edifice should cease to be used as a regular Baptist house of worship, or the congregation worshipping therein should cease to be recognized by the Southern New York Baptist Association, or the other buildings erected upon the premises should cease to be used exclusively for religious services and parsonage purposes and for mission and other charitable work conducted by said Baptist church, or the said Baptist church shall fail to pay to the obligee, his executors, administrators, or assigns, the nominal interest as the same shall accrue on the 1st day of May in each year. But, in the event of the property being sold at any time, or the church edifice ceasing to be used as a regular Baptist house of worship, or the congregation worshipping therein ceasing to be recognized by the Southern New York Baptist Association or its successors as a regular Baptist church, or the other buildings erected on said premises ceasing to be used exclusively for religious services and parsonage purposes, and for mission or other charitable work conducted by said Baptist church; that then, on the happening of either or any of said contingencies, the whole of the principal sum shall become due and payable immediately thereafter. (2) That, if default should be made in the payment of the interest, or any part thereof, on any day whereon the same is made payable, or should any tax or assessment or water rent be hereafter levied or imposed or become a lien or charge upon the mortgaged premises, and should the interest remain unpaid, etc., for 30 days, or said

tax or assessment or water rent remain unpaid and in arrears for 90 days, then and from thenceforth—that is to say, after the lapse or expiration of either one of said periods, as the case may be—the principal sum, with all arrearage of interest thereon, should, at the option of the obligee, his legal representatives or assigns, become due and payable immediately thereafter, although the contingencies on the happening of which payment of the principal sum above provided for may not then have happened, anything hereinbefore (in said bond) contained to the contrary notwithstanding. (3) A covenant on the part of the obligor to keep the church edifice and other buildings erected or to be erected on the mortgaged premises insured in an amount sufficient to rebuild the church edifice and the other buildings in case of their destruction; and in default thereof the obligee or his legal representatives or assigns should have the right to effect such insurance and to add the premiums paid, with interest, to the principal sum mentioned in said bond and secured by the mortgage, which should be a lien upon the mortgaged premises and be secured by said mortgage, and the whole of such principal, etc., should, at the option of the obligee and his legal representatives or assigns, become due and payable, anything in said bond contained to the contrary notwithstanding. (4) A covenant to apply the insurance moneys, with all convenient speed, and within a reasonable time, to the rebuilding of the church edifice and other buildings in case of their destruction, and, in default of so doing, declaring that the principal sum, etc., should, at the option of the obligee, his legal representatives or assigns, become due and payable immediately thereafter, anything in said bond contained to the contrary notwithstanding. (5) Each mortgage recites the bond which accompanies it, and also the conditions and covenants therein contained.

The evidence establishes the following breaches of the condition of each of the bonds in question: First, the omission to pay the interest; second, the omission to pay certain water rents and assessments; third, the omission to insure the church edifice and the other buildings in an amount sufficient to rebuild them in case of their destruction. The plaintiff insists that by the terms and conditions of the bonds the whole amount of principal became due at the option of the plaintiff upon the breach of any one of said conditions. On the defendant's part it is claimed: First. That by the terms of the agreement under which the several bonds and mortgages were executed, and by the terms of the bonds and mortgages as therein expressed, they could be foreclosed only when the mortgaged premises should be sold, or the church edifice cease to be used as a regular Baptist house of worship, or the congregation worshipping therein cease to be recognized by the Southern New York Baptist Association or its successors as a regular Baptist church, or the buildings cease to be used exclusively for religious services and parsonage purposes, and for mission or other charitable work conducted by the Baptist Church, and that no claim is made that any of said provisions has been violated by the defendant. Second. That by the terms of the three bonds and mortgages assigned to the Southern

New York Baptist Association, to which terms said association assented by its acceptance thereof, and by the terms of the several agreements and conditions pursuant to which said three bonds and mortgages were given, the Southern New York Baptist Association agreed to hold and not assign them, or any of them, and that the assignment thereof to the plaintiff was without authority and void. And as to the fourth of said bonds and mortgages it is claimed that it was agreed that they should be assigned by the mortgagee to the Southern New York Baptist Association, and held by it subject to the terms and under the agreement in pursuance of which the three other bonds and mortgages were given, and was not to be foreclosed except for a violation of said agreement.

The first question presented for determination is: Can a foreclosure of the mortgages in question be decreed, based upon the breach of the conditions and agreements contained in said bonds providing for the payment by the mortgagor of interest or taxes, assessments or water rents, or its refusal to insure the church edifice and other buildings in an amount sufficient to rebuild them in case of their destruction? The learned counsel contends that foreclosures cannot be decreed, because, by a provision contained in the bonds and mortgages in question, the payment of the principal sums can be enforced only in the event of the sale of the church property, or said property ceasing to belong to it, or upon the church edifice ceasing to be used as a regular Baptist house of worship, and the congregation worshipping therein ceasing to be recognized by the Southern New York Baptist Association, or upon the buildings other than the church edifice being used for religious services and other charitable work conducted by said Baptist church; none of which events, it is conceded, has happened. There is no breach of the conditions of the bonds in these respects, and therefore the principal sums therein mentioned have not become due and payable. An examination of the terms and conditions of the bonds and mortgages in question leads to the conclusion that the contention of the learned counsel is erroneous. It was undoubtedly the intention of the mortgagees that the moneys were loaned upon the understanding that such moneys were to be used and preserved for the benefit of the Baptist denomination and for Baptist church use for all time, and with this purpose in view the bonds and mortgages in question were executed. The Tabernacle Baptist Church belonged to the denomination which it was the intention of the mortgagees should be benefited by the use of the moneys so long as it complied with the conditions, and each and every of them, upon which the moneys were loaned; and that this was so is made more apparent by the language of the assignments of the mortgages to the Southern New York Baptist Association. By this instrument a trust was created by which the moneys received for or on account of the bonds and mortgages assigned were to be reinvested in others containing similar provisions and conditions; said moneys to be loaned for such Baptist extension work, or for such assistance of needy Baptist churches, as the trustees of the assignee and the board of managers of its city mission should deem safe and wise. For the purpose of securing the

moneys for which the bonds and mortgages in question were given to the uses and benefits for which it was intended by the respective mortgages, the conditions contained in the bonds in question were inserted, making a violation of any one of these conditions by which the security might be impaired and the intention of the mortgagee defeated a breach of the conditions of the bond, and gave to the mortgagee or his legal representatives or assigns the right to declare the whole amount of the principal to be due. The insertion of these conditions in the bonds and mortgages was a reasonable and proper precaution, because, in the event of a misuse of the funds, the intention of the mortgagee as to the use of the money would be defeated; or, in the event of the nonpayment of taxes and assessments, and a sale of the mortgaged premises because of such nonpayment, the security of the mortgage would be impaired, and it might be that the lien of the mortgage would be extinguished; and so, also, upon failure or neglect to insure the buildings in an amount sufficient to rebuild them in case of their destruction, the value of the mortgaged premises would undoubtedly be reduced, and the mortgage, as a security for the amount for which it was given, be impaired. Upon this branch of the case I am clearly of the opinion that the conditions contained in the bonds as to the use of the church, the payment of interest, of taxes and assessments and insurance, are each absolute and independent covenants and conditions, and that the breach of any one of them, in the absence of fraud or deceit on the part of the mortgagee or his representative, gave to the mortgagee the option to declare the principal amount to be due and payable, and, consequently, the right to maintain an action for the foreclosure of the mortgage. Malcolm v. Allen, 49 N. Y. 449; Bennett v. Stevenson, 53 N. Y. 508; Leopold v. Hallheimer (Sup.) 37 N. Y. Supp. 154. I have examined the authorities cited by the learned counsel for the defendant, and do not find that they sustain his contention upon the question of the right of the plaintiff to maintain this action based upon the breaches of the condition of the bonds, upon which it relies.

It is further insisted on behalf of the defendant that the assignment of the three first-mentioned mortgages by the Southern New York Baptist Association to the plaintiff was invalid, because it was not made by consent of all the parties, or by the order of a court of competent jurisdiction, and that the assignment of the fourth mortgage was void because it should have been made to the Southern New York Baptist Association. In respect to the assignment of the three first-mentioned mortgages, it is sufficient to say that the assignment was authorized by chapter 410 of the Laws above recited, and also by authority of a resolution of the association. It is insisted that the assignment of the fourth mortgage was made in violation of a pledge claimed to have been made by the mortgagee to the pastor of the Tabernacle Baptist Church, to the effect that any sums which the mortgagee might contribute to the improvement of the church and the erection of new buildings should never be lost to the Baptist Church. The minutes of a meeting of the defendant church were put in evidence, by which it appears that $23,400 was

expended by Mr. Rockefeller for the benefit of the defendant over and above the amount secured by the mortgages previously executed to him, and by him assigned to the Southern New York Baptist Association; and a resolution was adopted authorizing the execution of the fourth mortgage, with the understanding that it would be transferred by the mortgagee to said association. The mortgage was assigned directly to the plaintiff in this action by an instrument acknowledged on the 29th of May, 1894, containing substantially the same conditions as to the use and disposition of the moneys secured by said mortgage as those contained in the assignment of the three preceding mortgages to the Southern New York Baptist Association: and that association having, previous to the execution of the assignment of the fourth mortgage, by an amendment of its constitution, withdrawn from city mission work, adopted a resolution authorizing a conveyance of its property to the City Mission Society, which it was empowered to do by chapter 410 of the Laws of 1893, incorporating the plaintiff, and authorizing it to carry on the same charitable work as the association had previously carried on. The assignment was made to the plaintiff directly, in furtherance of the original intention of the mortgagee as to the uses and purposes to which the moneys secured by the mortgage should be applied. There was, therefore, no violation of the "pledge" given by the mortgagee to the pastor of the defendant's church, and, as the defendant's right to the use of the money was in no way prejudiced, there does not appear to be any force in this objection, especially so as the defendant is a mere debtor, and in no sense a cestui que trust; nor can it question the validity of this or any of the assignments of the mortgages to the plaintiff in this action. Sheridan v. Mayor, etc., of New York, 68 N. Y. 30. See, also, chapter 187, Laws 1894.

It is further claimed that chapters 187, Laws 1894, and 410, Laws 1893, authorizing the transfer of the first three of said mortgages to the plaintiff, are unconstitutional, and consequently the assignments are void. An examination of the citations in support of this contention appearing upon the brief of the learned counsel for the defendant fails to convince me that there is any force in this contention, and I am clearly of the opinion that the acts in question do not violate any provision of the constitution of the United States or of this state. The evidence clearly establishes the fact of a breach of the conditions of the bonds in question by the defendant by its omitting to pay the interest, water rents, and assessments, and by failing to insure the church edifice and other buildings in an amount sufficient to rebuild them in case of their destruction, and that the plaintiff exercised the option to declare the principal sums mentioned in the bonds, and which are secured by the mortgages in question, to be due and payable, as it was legally authorized to do by the conditions and agreements therein contained, and it follows that the plaintiff is entitled to judgment as prayed for in the complaint.

Judgment for plaintiff.